UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| ESSEX INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 12-138-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MORTON CONSTRUCTION, LLC, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This action is ancillary to a case currently pending in state court. An unfortunate construction accident that resulted in injuries to James Johnson is the seed from which these lawsuits have grown. Johnson's suit is pending in Letcher County Circuit Court. Defendants in that case include Morton Construction, LLC (Morton) and Whitaker Bank. Essex Insurance Company (Essex) is not named in Johnson's state action. Its involvement with this general matter stems from an insurance policy issued to Morton Construction.

Essex Insurance comes before this Court seeking a declaration that it is neither required to defend nor indemnify Morton Construction. Morton, for obvious reasons, opposes such a ruling and has filed a Motion to Dismiss Essex's declaratory judgment action. For the reasons set forth below, the Court will DENY Morton's motion.

**I**

**A**

Whitaker Bank engaged the services of Morton Construction in order to renovate a building in Whitesburg, Kentucky. [R. 6-1 at 1.] Morton, in turn, sub-contracted some of the

construction work to Johnson. [*Id*.]  Through circumstances that were not explained, bricks started to fall from the partially constructed building while Johnson was working. [*Id*.]  This caused Johnson to fall and suffer undisclosed injuries. [*Id*.]  In April 2012, Johnson filed his state court action. [*Id*. at 1-2.]

Essex Insurance was not included as a party defendant in that action. [R. 9 at 6.]  Essex, however, was involved in that action as it issued a "commercial general liability insurance policy" to Morton.  Pursuant to that policy, Essex initially provided Morton's defense, but under a reservation of rights. [R. 6-1 at 2.]  Almost three months after Johnson's suit was filed, Essex filed a Complaint for Declaratory Judgment. [R. 1]  In lieu of filing an answer to Essex's complaint, Morton filed a motion to dismiss. [R. 6.]  In its motion, Morton asks the Court to decline to invoke its discretionary jurisdiction and dismiss Essex's complaint. [*Id*.]

**B**

As a threshold matter, the Court must determine if it has subject matter jurisdiction over Essex's case.  *See Caudill v. N. Am. Media Corp*., 200 F.3d 914, 916 (6th Cir. 2000) (explaining that the "first and fundamental question presented by every case brought to the federal courts is whether it has jurisdiction to hear a case") (citations omitted) (internal quotation marks omitted). Essex Insurance invokes the Court's diversity jurisdiction under 28 U.S.C. § 1332(a)(1). [R. 1.] Essex states that it is Delaware corporation and citizen, [*Id*. at 1] and that Morton Construction is an LLC with Kentucky citizenship.  Hence, diversity is present.  Whether the required amount in controversy is satisfied is contested.

For actions seeking a declaratory judgment, the amount in controversy requirement is measured by the value of the object of the litigation.  *Northup Properties, Inc. v. Chesapeake Appalachia*, *LLC*, 567 F.3d 767 (6th Cir. 2009) (quoting *Hunt v. Wash. State Apple Adver.*

2

*Comm'n,* 432 U.S. 333, 347 (1977)).  Under this approach, the amount of controversy should be determined "from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect." *Woodmen of the World/Omaha Woodmen Life Ins. Soc. v. Scarbo*, 129 F. App'x 194, 195-96 (6th Cir. 2005) (internal quotations and citations omitted).  To determine the value of this controversy, the Court examines the amount alleged in the complaint. *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990).  "In a federal diversity action, the amount alleged in the complaint will suffice unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount."

In this case, Essex Insurance alleged in its complaint that it reasonably believed the amount in controversy exceeds $75,000, exclusive of interests and costs, through reference to the insurance policy at issue and the injuries and remedies sought by Johnson. [R. 1 at 2, 3.]  Morton Construction counters, arguing that the amount of damages in the state action are undetermined. [R. 6-1 at 2.]  The amount indeed is undetermined, but the "value of the consequences which may result from the litigation" purportedly exceed $75,000, and that is determinative. *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 253 (6th Cir. 2011) (quoting *Lodal, Inc. v. Home Ins. Co. of Ill.*, 1998 WL 393766, at *2 (6th Cir. June 12, 1998)).  Because of the nature of Johnson's claim and the damages sought, it cannot be said to a legal certainty that the claim falls short of the amount in controversy requirement.  *See, e.g.*, *Wolfe v. Lincoln General Ins. Co.*, 2002 WL 484638 *2 (S.D. Ohio 2002); *Knickerbocker v. Chrysler Corp.*, 728 F.Supp. 460 (E.D. Mich. 1990).  The requirements of § 1332 therefore have been satisfied.

## II

Having found that subject matter jurisdiction exists, the Court now must determine whether it should exercise jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

The exercise of jurisdiction under the Act is not mandatory. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942); *see also Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004). "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). In other words, although the District Court has jurisdiction of the suit brought under the Declaratory Judgment Act, it is "under no compulsion to exercise that discretion." *Brillhart*, 316 U.S. at 494.

Therefore, this Court must determine whether this case is appropriate for such relief. In making this assessment, the Court should determine "whether the judgment will serve a useful purpose in clarifying and settling the legal relationships in issue and whether it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Brotherhood Mut. Ins. Co. v. United Apostolic Lighthouse, Inc.*, 200 F. Supp.2d 689, 692 (E.D. Ky. 2002) (citations omitted) (internal quotation marks omitted). A full inquiry into all relevant considerations must be made, taking into account the following five factors:

> (1) whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
> (5) whether there is an alternative remedy which is better or more effective.

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (citations omitted). These factors are useful benchmarks and must be considered, but the ultimate decision about whether to

accept jurisdiction is left to the "unique and substantial" discretion of the Court. *Id.* at 563 (quoting *Wilton*, 515 U.S. at 286).

With respect to the first factor, whether the declaratory action would settle the controversy, the *Flowers* court noted a split in precedent regarding how to analyze this factor "in the context of an insurance company's suit to determine its policy liability." *Id.* at 555. According to the court, "[o]ne set of cases has concluded that a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action." *Id.* (citing cases). "A different set of cases, however, has found that, while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court." *Id.* (citing cases).

This case falls into the former category. Essex Insurance is not a party to the state court action, and this dispute is only between Morton Construction and Essex. Clearly a decision by this Court does not resolve Johnson's controversy, but it does allow Essex a more timely clarification of its position. At this time, this issue cannot be considered by the state court because Essex is not a party. *See id.* at 556.

Morton Construction tries to place the employment relationship between Morton and Johnson at issue. [R. 11 at 2.] Morton argues this factual question will be examined in state court while determining liability. [*Id.*] While the facts and issues are still only roughly sketched out in this action, Essex Insurance's complaint gives the Court confidence that it is unlikely the question of employment relationship will have significant bearing on Essex's responsibilities. [R. 1 at 4-6.] That is because, according to Essex's quotations from the policy, bodily injury to

employees while they act in the scope of their employment, [*Id.* at 4-5] and bodily injury for any

sub-contractor—as Morton deemed Johnson [R. 6-1 at 1]—are not covered.[1]

Using parlance familiar to those who have read Sixth Circuit declaratory judgment

precedent, this case is more similar to *Flowers*, 513 F.3d at 556, and *Northland Ins. Co. v.*

*Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003), than *Bituminous Cas. Corp. v. J & L*

*Lumber Co.*, 373 F.3d 807 (6th Cir. 2004).  Accordingly, the Court finds that this action could

settle the controversy as to Essex and Morton.

The second factor, whether the declaratory action would serve a useful purpose in

clarifying the legal relations in issue, "is closely related to the first factor and is often considered

in connection with it.  Indeed, it is almost always the case that if a declaratory judgment will

settle the controversy, then it will clarify the legal relations in issue." *Flowers*, 513 F.3d at 557

(citations omitted).  In *Flowers*, the Sixth Circuit clarified that

> [t]he requirement that the judgment clarify the legal relationships of the parties is
> based upon our desire for the declaratory judgment to provide a final resolution of
> the discrete dispute presented.  While the parties may have other tortious or
> contractual relationships to clarify in state court, our concern . . . is with the
> ability of the federal declaratory judgment to resolve, once and finally, the
> question of the insurance indemnity obligation of the insurer.  Thus, we focus
> only on whether a federal declaratory judgment will clarify the legal relationships
> presented to the district court.

*Id.*  Essex Insurance's declaratory judgment action will provide a final resolution of the discrete

issue presented, namely its obligation to defend Morton Construction in the state action and

indemnify it with respect to the state court claims.  Thus, it will clarify the legal relations in

issue.  The second factor weighs in favor of the Court's exercise of jurisdiction.

---

[1] It should be reiterated, the Court is not ruling on these employment issues definitively.  Merely, it is using
the evidence before it to predict the likelihood that this action could settle a particular controversy.

The third factor asks "whether the use of the declaratory judgment action is motivated by 'procedural fencing' or likely to create a race for *res judicata*." *Id.* at 558.  It "is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." *Id.* (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)).  When the declaratory judgment "plaintiff has filed his claim after the state court litigation has begun, we have generally given the plaintiff 'the benefit of the doubt that no improper motive fueled the filing of [the] action.'" *Id.* (quoting *Bituminous*, 373 F.3d at 814).  In *Flowers*, because the insurance company was not a party to the state court action and the issue of insurance coverage was not before the state court, the insurance company's attempt to clarify its legal obligations in federal court could not "be construed as an attempt to create a race to judgment." *Id.*  For the same reasons, and because there is no evidence of any improper motive on the part of Essex Insurance, the third factor weighs in favor of the Court exercising jurisdiction over this action.  *See Flowers*, 513 F.3d at 559, 563 (indicating that absence of improper motive by declaratory judgment plaintiff points toward exercising jurisdiction).

The fourth factor requires the Court to consider whether the declaratory action would increase the friction between federal and state courts.  The Supreme Court has cautioned that "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in gratuitous interference, if it permitted the federal declaratory action to proceed.'" *Id.* at 559 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 283, 115 S.Ct. 2137).  To help avoid that situation, three sub-factors should be considered:

(1) whether the underlying factual issues are important to an informed resolution of the case;
(2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
(3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id.* at 560.

With regard to the first sub-factor, the *Flowers* court clarified that it "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Id.* Sometimes declaration of insurance coverage can be resolved as a matter of law and factual findings by a state court are unnecessary to that determination. *Id.* (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)). In such cases, federal jurisdiction may be suitable. *See id.* However, if the issues raised in the federal case require making factual findings that might conflict with similar findings in state court, "exercise of jurisdiction would be inappropriate." *Id.*

The force of this sub-factor does not oppose jurisdiction. The overlapping factual determinations appear minimal, as described above. Of particular importance, it does not seem like this action will be impacted by any findings about Johnson's employment status. Accordingly, the Court believes that the underlying factual issues in the state action are not important to an informed resolution of the coverage issue.

The second sub-factor also weighs in favor of exercising jurisdiction. It "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. State courts are generally better suited to resolve novel questions of state law. *Id.* However, "when an insurance company is not a party to the state court action, and neither the scope of the insurance coverage nor the obligation to defend [is] before the state

court, . . . a decision by the district court on these issues would not offend principles of comity." *Id.* (citing *Northland*, 327 F.3d at 454). Morton Construction offers no showing that Kentucky law is unsettled in this area, and the state court is not being called upon to consider the extent of Essex Insurance's duties to Morton because it is not a party to that action. Exercising jurisdiction would therefore not offend this sub-factor.

With respect to the third sub-factor, the Sixth Circuit has held that

> [i]ssues of insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve. The states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation for such regulation.

*Id.* at 561 (internal citations and quotation marks omitted). Therefore, the third sub-factor weighs in favor of declining jurisdiction.

To sum up these sub-factors, two are in favor of jurisdiction, while one opposes it. The sub-factor in opposition, however, is outweighed by the importance of the other two issues, and the balance of this factor tips in Essex's favor.

Finally, the Court turns to the fifth factor, whether there is an alternative remedy that is better or more effective. Essex Insurance has alternative remedies. Kentucky has its own declaration of rights statute, KRS 418.040, so it could assert its declaratory action in state court. Proceeding in state court would have the advantage that "Kentucky courts might also [be] able to combine the two actions so that all issues could be resolved by the same judge." *Flowers*, 513 F.3d at 562. Alternatively, Essex could presumably file an indemnity action after the underlying state action has been resolved. *See id.* But this remedy is inferior, primarily because Essex would be delayed in clarifying its status. Under these facts, the federal forum is not necessarily an inferior forum to the state court.

9

**III**

Four of the factors support jurisdiction while the fifth factor favors neither party.  In balancing these factors, the Court must rely on its "unique and substantial" discretion. *Id.* at 563. In so doing, the Court concludes that the case for exercising jurisdiction is stronger than the case for denying it.  In particular, the facts that Essex showed no ill-intent in filing this action and that this action can elucidate the legal relationship between Essex Insurance and Morton Construction and settle their controversy, support honoring Essex's choice of forum.  In addition, this will not increase friction between the state and federal courts.  On balance, the Court believes jurisdiction should be retained.

Accordingly, upon review of the record and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Defendant Morton Construction's Motion to Dismiss [R. 6] is **DENIED**.

This 27th day of March, 2013.

Signed By:

*Gregory F. Van Tatenhove*

United States District Judge