UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| ESSEX INSURANCE COMPANY, | ) ) ) | Crim. No. 12-138-GFVT |
| Plaintiff, | ) ) | |
| V. | ) ) | **MEMORANDUM OPINION** |
| MORTON CONSTRUCTION, LLC, | ) ) ) | **&** **ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the Plaintiff's Motion for Summary Judgment. [R. 24.] The Plaintiff, Essex Insurance Company, has argued that the commercial liability insurance policy that it issued to Defendant Morton Construction, LLC does not require it to defend or indemnify the Defendant in the underlying state court action. For the reasons discussed below, the Plaintiff's Motion is GRANTED.

**I**

**A**

Plaintiff Essex Insurance Company ("Essex") issued a commercial general liability insurance policy, Policy No. 3DE7627, with effective dates of November 24, 2010, through November 24, 2011, to Defendant Morton Construction, LLC ("Morton"). [R. 24 at 1, 3.] The claim at issue arises out of an incident occurring on August 11, 2011, in Letcher County, Kentucky on the premises of Whitaker Bank. Whitaker Bank had contracted with Morton to perform certain renovations on the bank building, and Morton then subcontracted with Johnson Masonry to remove brick from the side of the building. [*Id*. at 2; R. 25 at 1.] James Johnson, Jr.

who was the owner of Johnson Masonry, was injured while performing the work on Whitaker Bank. Johnson then brought suit against both Whitaker Bank and Morton Construction in Letcher Circuit Court, alleging negligence on the part of Whitaker Bank and also on the part of Morton Construction who was acting as the Bank's retained agent. [R. 24 at 2.] The parties do not dispute that at the time Johnson was injured he was working as a subcontractor for Morton. [*Id*. at 3, Ex. 2 at 1-2.] Johnson's complaint further alleged that he was entitled to damages for medical expenses, pain and suffering, loss of earning capacity, parental loss of consortium, and punitive damages.

Essex has undertaken Morton's defense in the state court action subject to a reservation of rights. [*Id*. at 3.] Morton, however, also insists that its insurance policy requires Essex to indemnify it against any judgment that may be awarded to Johnson in the state court action. In response, Essex has filed suit in this Court, pursuant to the Court's diversity jurisdiction, seeking a declaratory judgment that it is not required to either defend or indemnify Morton under the policy. According to Essex, the endorsements in the insurance policy contain various exclusions to coverage, including exclusions for injuries sustained by subcontractors, certain damages sustained by independent contractors, and punitive damages. [R. 24 at 3-4.] Morton, however, contends that the language of the insurance policy creates an ambiguity concerning coverage, and that because of the alleged inconsistencies and unexplained ambiguities in the policy, any doubt as to whether or not there is coverage should be resolved in Morton's favor. [R. 25 at 2-3.]

**B**

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). Summary judgment is improper, however, if genuine

factual issues exist that "may reasonably be resolved in favor of either party," and therefore must be submitted to a jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255).

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that a genuine issue exists. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002) (citing *Celotex Corp.*, 477 U.S. at 324). Yet even when construing the evidence in the light most favorable to the non-moving party, the non-moving party still "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushitu Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Rather, the Federal Rules of Civil Procedure require the non-moving party to present "specific facts showing that there is a genuine issue for trial." *Id.* (citing Fed. R. Civ. P. 56(e)).

### C

For purposes of jurisdiction, Essex is a citizen of Delaware, Morton is a citizen of Kentucky, and the amount in controversy is over $75,000. Thus, this Court has diversity jurisdiction pursuant to 28 U.S.C. §1332, and must apply the laws of the state of Kentucky concerning insurance policies to determine the scope of Morton's coverage. *See Scottsdale Ins.*

*Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008). In doing so, this Court must follow the decisions of the highest court of Kentucky and may consider the appellate courts' decisions as persuasive. *Id*. In Kentucky, "the interpretation of insurance contracts is a matter of law for the Court" to decide, and is appropriately determined through summary judgment when there are no other factual issues in dispute. *West Am. Ins. Co. v. Prewitt*, 401 F. Supp. 2d 781, 783 (E.D. Ky. 2005), *aff'd*, 208 F. App'x 393 (6th Cir. 2006).

Under Kentucky law, "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, indorsement, or application attached to and made a part of the policy." Ky. Rev. Stat. § 304.14-360. When interpreting an insurance contract, the policy "must be construed without disregarding or inserting words or clauses, and 'seeming contradictions should be harmonized if reasonably possible.'" *Kemper Nat. Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 875-76 (Ky. 2002) (quoting Am. Jur. 2d, *Insurance*, § 275).

Kentucky courts have long recognized that for public policy reasons, insurance contracts "should be liberally construed and any doubts resolved in favor of the insured." *Dowell v. Safe Auto Ins. Co.*, 208 S.W.3d 872, 878 (Ky. 2006). Courts should seek to interpret the policy according to the intent of the parties at the time they entered into the contract. *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W. 3d 129, 132 (Ky. 1999). Where ambiguities in the policy exist, they are to be construed in favor of the insured and so as to effectuate coverage. *Wolford v. Wolford*, 662 S.W. 2d 835, 838 (Ky. 1984); *see also St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 227 (Ky. 1994)( stating that when provisions in an insurance policy conflict, "the contract shall be resolved to afford maximum coverage"); *James Graham*

*Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991) ("Kentucky has consistently recognized that an ambiguous policy is to be construed to effectuate the purpose of indemnity.").

Despite a policy inclination of favoring the insured, however, "'[t]he rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with . . . the plain meaning and/or language of the contract.'" *Scottsdale*, 546 F.3d at 564 (quoting *St. Paul*, 870 S.W.2d at 226). "Insurance policies, like statutes, must receive a sensible construction." *Id*. (quoting *Simpsonville Wrecker Serv. Inc. v. Empire Fire & Marine Ins. Co*., 793 S.W.2d 825, 829 (Ky. App. 1989)). Indeed, Kentucky courts have recognized that "a liberal interpretation [of an insurance policy] is not synonymous with a strained one." *K.M.R. v. Foremost Ins. Group*, 171 S.W.3d 751, 753 (Ky. App. 2005). Thus, "courts should not rewrite an insurance contract to enlarge the risk to the insurer." *St. Paul*, 870 S.W.2d at 226-27. Rather, where the language of the policy is not ambiguous, it should not be construed to mean anything other than what it says. *Simpsonville Wrecker*, 793 S.W.2d at 226-27.

In the case at hand, the parties do not dispute that Whitaker Bank had contracted the work to Morton at the time of the accident, nor do they dispute that Johnson was injured while working as a subcontractor for Morton. [R. 24 at 2, 6; R. 25 at 2.] It appears that the only dispute between the parties is whether the insurance policy contains an ambiguity as to whether it provides coverage for injuries sustained by independent contractors and/or subcontractors. [R. 25 at 2.] Essex has pointed to three specific Endorsements in the insurance contract that Essex claims modify the policy in order to exclude coverage for injuries sustained by subcontractors,

5

temporary workers, independent contractors, or employees of independent contractors, and also excludes coverage of any punitive damages. [R. 24 at 3-4.] Thus, Essex claims it has no duty to indemnify Morton for any of the claims asserted by Johnson in the state court action, and at the very least, that Essex has no duty to indemnify Morton for the punitive damages which Johnson has also claimed. [R. 24 at 6.] Essex further contends that it has no duty to defend Morton for claims which are not covered by the policy. [R. 24 at 5.]

Morton, on the other hand, has presented only one argument in its responsive brief. Morton claims that the policy language on the supplemental declarations page indicates that the premium Morton paid included coverage for "contractors-subcontracted work," thereby creating an inconsistency with the language in the endorsements cited by Essex. [R. 25 at 2.] According to Morton, because this alleged inconsistency is not explained in the policy, it creates an ambiguity as to whether or not there is coverage, and any such ambiguity must be resolved in favor of providing coverage to Morton. [*Id.* at 2-3.]

Morton is correct that where language in an insurance contract is ambiguous, the ambiguity must be resolved in favor of the insured. *Wolford*, 662 S.W. 2d at 838. An ambiguity exists within an insurance policy "when a policy is susceptible to two (2) or more reasonable interpretations." *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003). In cases where such ambiguities exist, the doctrine of reasonable expectations requires the Court to interpret the ambiguous terms " "in favor of the insured's reasonable expectations'" of coverage. *Id.* at 443 (citing BLACK'S LAW DICTIONARY 1273 (7th ed. 1999)). If there is no ambiguity as to coverage, however, then the reasonable expectations doctrine does not apply. *Id.* at 443.

The Court therefore must analyze the language of the policy, and specifically the language referred to by the parties, in order to determine if an ambiguity exists. The policy at

issue is a commercial general liability insurance policy, Policy No. 3DE7627, and contains various exclusions pertaining to coverage. As a threshold matter, the Court notes that the policy itself does not cover the claims at issue in this case, and the parties do not cite to any part of the general policy concerning questions of coverage for subcontractors or punitive damages. Rather, the parties' dispute centers entirely on the endorsements and the Declarations page. As presented to the Court, several endorsements precede the general policy, all of which read in large, bold block print: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY." [*See* R. 24-5.] Each endorsement then explains which parts of the policy it modifies and how. The first endorsement that Essex refers to is titled "Combination Construction Related Endorsement," and appears on page 1 of ME 043 04 10. [R. 24-5 at 13.] The endorsement begins by stating that it modifies the policy by adding several items to "Section 1, Item 2, Exclusions." [*Id*.] The relevant language for our purposes reads as follows:

1. The coverage under this policy does not apply to "bodily injury," "property damage," or "personal and advertising injury" or any injury, loss or damage:

    \*\*\*
    (e) Arising out of, caused or contributed to by any injury sustained by any contractor, self-employed contractor, and/or subcontractor, or any "employee," "leased worker," contract worker, "temporary worker" or "volunteer worker" of same hired by you or on your behalf. This exclusion applies to any obligation to share damages with or repay someone else who must pay damages because of the injury, as well as liability assumed under any "insured contract."

[R. 24-5 at 13.] This endorsement clearly modifies the policy to exclude coverage of bodily injury sustained by the groups and/or individuals described therein. Because the parties agree that Johnson was at least working as a subcontractor, if not also an independent contractor and/or self-employed contractor, it would appear from this language that Essex is not obligated to

7

provide coverage for his injuries.

Essex next points to Endorsement M/E-065 (1/09), which again reads in large block print "THIS ENDORSEMENT CHANGES YOUR POLICY," and then goes on to say:

> The coverage under this policy does not apply to "bodily injury," "property damage," "personal and advertising injury," or any injury, loss or damage sustained by any employee of an independent contractor contracted by you or on your behalf.

[R. 24-5 at 17.] If Johnson was working as an independent contractor for Morton, which the parties do not clearly address in their briefs and which Morton has not disputed, then this endorsement excludes coverage for Johnson's injuries.

Finally, Essex refers to the "Combination General Endorsement," ME 001 04 10, which says that the section of the policy dealing with Item 2 for Exclusions, section "e" for Employer's Liability, "is replaced by the following and applies throughout this policy." [R. 24-5 at 10.] That language is followed by a list of various exclusions which reads in relevant part:

> 3. Fines, penalties, and punitive or exemplary damages are not covered under this policy nor are any expenses or any obligation to share such damages or repay another.

[R. 24-5 at 10.] This endorsement clearly adds the exclusion of punitive damages to the list of exclusions contained in the general policy.

Thus far, it appears fairly clear that the insurance policy does not obligate Essex to cover general or punitive damages connected to Johnson's injuries.[1] However, the part of the policy

---

[1] If Morton were to provide evidence that Johnson was not working as a subcontractor or independent contractor for Morton, then perhaps there would be an argument that these Endorsements do not apply to him, but Morton has not disputed that Johnson was a subcontractor, and at least based on the facts presented it would appear that all three of these Endorsements apply.

8

that Morton claims creates the ambiguity is a line on the page entitled "Commercial General Liability Coverage Part Supplemental Declarations." [R. 24-5 at 9.] That page lists the various monetary limits of the insurance policy, and then lists the premium rating provisions. The section at issue describes the rate for various types of work and describes Morton's business classification as "contractors-subcontracted work," followed by the applicable premium. [*Id*.] Despite Morton's alleged confusion about coverage, this page merely describes the premium rate. Moreover, directly beneath the section describing the premium, the same page contains another section titled "Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue." [*Id*.] Immediately following that language is a list of the page numbers of various endorsements which are part of the policy. All three endorsements discussed above are included in that list. Additionally, the language at the very bottom of the same page states in all capital letters that the information on that page must be read in the context of the rest of the policy. The content of the Declarations page, together with the clear statement as to what items are part of the policy (and specifically including all endorsements at issue), make clear that the endorsements apply, and that coverage for subcontractors and punitive damages is excluded.

"The policy and its endorsements validly made a part thereof together form the contract of insurance, and are to be read together to determine the contract actually intended by the parties." *Kemper,* 82 S.W. 3d at 875 (quoting 1 Couch on Insurance 2d, § 4:36). Endorsements "are later in time than the original policy," and thus "should prevail over any conflicting provisions of the policy." *Id*. (quoting *Goodin v. General Accident Fire and Life Assurance Corp*., 450 S.W.2d 252, 256 (Ky. App. 1970)). Moreover, "an insurance contract must be construed without disregarding or inserting words or clauses." *Kemper*, 82 S.W.3d at 875-76. Thus, the endorsements in Essex's insurance policy must be read together with the policy and

9

"prevail" over any possible contradictions in the Declarations page. *See id*. at 875.

The endorsements at issue here each involve a coverage exclusion. In *Kemper*, the court recognized the principle of construing ambiguous terms in favor of the insured, but it granted summary judgment in favor of the insurance company because the policy agreement read together with the applicable exclusions clearly excluded coverage. *Kemper*, 82 S.W.3d at 873. The court in *Kemper* reasoned that if "any one exclusion applies there should be no coverage, regardless of inferences that might be argued on the basis of exceptions or qualifications" contained in other parts of the policy. *Kemper*, at 874. Thus, the clearly drafted exclusions contained in the Essex insurance policy's endorsements are enforceable regardless of the premium rating provision. "Where the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written." *West Am. Ins. Co.*, 401 F.Supp. 2d at 788 (quoting *Kemper*, 82 S.W.3d at 873).

Moreover, as stated above, Kentucky law requires that "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, *and as amplified, extended, or modified by any rider, [e]ndorsement*, or application attached to and made a part of the policy." KRS 304.14-360 (emphasis added). The endorsements excluding coverage of punitive damages and for injuries sustained by subcontractors were clearly "attached to and made a part of the policy," by the endorsements themselves and by the language on the page which Morton claims is ambiguous. In addition, each endorsement clearly states that it changes the policy, clearly explains which part of the policy it changes and how, and admonishes the reader to read it carefully. Even if there were some doubt as to the policy's coverage, "specific clauses in insurance policies control general clauses." *State Auto. Mut. Ins. Co. v. Ellis*, 700 S.W. 2d 801, 803 (Ky. Ct. App. 1985). Thus, the specific clauses in the endorsements which

explicitly exclude coverage for subcontractors and independent contractors would control the much more general description on the Declarations page. In this light, when interpreting the policy as a whole, including the endorsements, no ambiguity exists as to whether subcontractors are covered.

Despite Morton's professed confusion as to the meaning of the terms in the Declarations page concerning premiums, "[t]he rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it," nor that "a nonexistent ambiguity [should] be utilized to resolve a policy against the company." *St. Paul Fire & Marine*, 870 S.W.2d at 226. Only when the policy contains "ambiguous insurance contract language" will Kentucky courts apply the reasonable expectations doctrine and interpret the provisions in favor of the insured. *Scottsdale Ins. Co.*, 513 F.3d at 565 (citing *True*, 99 S.W.3d at 443).

As to coverage of punitive damages, Morton does not even claim that there is any ambiguity or inconsistency concerning whether the policy covers punitive damages. The Declarations page on which Morton bases its entire argument says nothing about punitive damages except for referencing the endorsement that specifically excludes coverage of punitive damages when listing what provisions are part of the policy. "The terms of insurance coverage should not be extended beyond any clear or unambiguous limit," and there is therefore no dispute concerning the exclusion of punitive damages in this case. *Masler v. State Farm Mut. Auto. Ins. Co.*, 894 S.W.2d 633, 635-36 (Ky. 1995).

The Court fully recognizes that an insured person "is entitled to all the coverage he may reasonably expect "under the policy and that only an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat this expectation." *Scottsdale Ins.*, 513 F.3d at 565 (quoting *Brown v. Ind. Ins. Co.*, 184 S.W.3d 528, 540 (Ky.

2005)). However, the Court also notes that the endorsements in this policy clearly changed the policy itself, and that the wording of the endorsements, together with the language on the bottom of the supplemental declarations page specifically including those endorsements as part of the policy, suffice as a "conspicuously plain and clear manifestation" of Essex's intent to exclude coverage for injuries sustained by subcontractors and for punitive damages. *See id*. Thus, policy at issue is not "susceptible to two or more interpretations" concerning coverage, and Morton's confusion about the applicable premium alone cannot create an ambiguity where none exists. *See True*, 99 S.W.3d at 443. Because there is no ambiguity, Morton's argument that the policy should be interpreted in light of his expectations of coverage fails because "[o]nly actual ambiguities, not fanciful ones, will trigger application of the doctrine [of reasonable expectations.]" *Id*. (finding the doctrine of reasonable expectations inapplicable where the court could discern no ambiguity).

Thus, the Court finds no ambiguity as to whether the insurance policy covers punitive damages or injuries sustained by subcontractors. Morton has not provided any arguments or legal analysis to say otherwise – Morton merely asserts that the language is ambiguous without explaining how, and without citing to any caselaw that would support the argument that the general description of premiums on the declarations page should somehow trump the explicit exclusions set out by the endorsements. "It is not enough for one party to claim ambiguity." *Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 635 (Ky. 2005) (acknowledging that ambiguities should be resolved in favor of the insured but nevertheless finding that the coverage exclusions clearly stated in the insurance policy applied). Regardless of what Morton initially thought was covered, the endorsements by their very nature alter the insurance policy to which they are attached, and Morton has not shown how or why this Court

should disregard the clear language of the endorsements. Indeed, the "mere fact that [a party] attempt[s] to muddy the water and create some question of interpretation does not necessarily create an ambiguity." *True*, 99 S.W. 3d at 443 (internal quotations omitted).

Because no ambiguity exists, the Court must enforce the policy as it was written and agreed to by the parties. *Kentucky Ass'n of Counties*, 157 S.W. 3d at 633 ("[W]here there is no ambiguity, the rule of liberal construction in favor of the insured is inapplicable. As it has been stated numerous times by the courts in this Commonwealth, courts cannot enlarge coverage or make new contracts under the guise of construction, but must determine the parties' responsibilities according to the contract terms."); *see also Jett v. Doe,* 551 S.W.2d 221, 223 (Ky. 1977) ("[O]nce such a condition is clearly expressed in the policy and agreed upon by the parties, the courts must give it full force and effect and abstain from making a new or different contract under the guise of interpretation at the instance of the disappointed party.").

As for whether Essex must defend Morton in the Letcher County lawsuit, the duty to defend is separate from and broader than the duty to indemnify. *Brown Found*., 814 S.W.2d 273, 279-80 (Ky. 1991). Essex has a duty to defend Morton "if there is any allegation which potentially. . . might come within the coverage of the policy." *Id*. at 279. Based on the facts before the Court, Johnson was working on the Bank as a subcontractor for Morton. As discussed above, the endorsements in the insurance policy clearly exclude any damages for any injury sustained by subcontractors, and any punitive damages. An insurer's duty to defend ends once it becomes clear that the liability at issue is not covered by the policy. *See id*. at 279. Therefore, the allegations Johnson has brought in Letcher Circuit Court would not come within the policy's

coverage, and Essex does not have a duty to defend Morton from Johnson's claims.[2]

### III

"Because the insurance contract is not ambiguous, we do not need to inquire into the reasonable expectations of the parties, but rather must construe the contract 'according to the entirety of its terms and conditions as set forth in the policy.'" *Scottsdale*, 513 F.3d at 566 (quoting KRS § 304.14-360.) Thus, the Endorsements should be construed and enforced as stated, excluding coverage of punitive damages and of injuries sustained by subcontractors and independent contractors. Consequently, it is clear that Essex has no duty to defend or indemnify Morton for the damages claimed by Johnson in the Letcher Circuit Court. Accordingly, the Court having considered the record and being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Plaintiff's Motion for Summary Judgment [**R. 24**] shall be **GRANTED**;

2. The Final Pretrial Conference scheduled for **Tuesday, February 18, 2014**, and the Jury Trial scheduled for **Monday, March 3, 2014**, are **CANCELLED**; and

3. The Court will enter an appropriate Judgment contemporaneously herewith.

This 7th day of February, 2014.



---

[2] The Court notes that Morton has made no attempt to argue that Essex has a duty to defend Morton. Morton's response brief contains only one paragraph concerning any argument on Morton's behalf, and that paragraph merely asserts that the contract contains an ambiguity as to coverage because of the Declarations sheet, and that any doubt about coverage must be resolved in Morton's favor. The Court has already addressed this argument above, and as Morton has advanced no further arguments concerning the specific duty to defend, the Court assumes that Morton

has conceded the point that if Johnson is a subcontractor, and if the policy excludes coverage for injuries sustained by subcontractors, then Essex has no duty to defend Morton from Johnson's claims.